**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

PLATE FABRICATION AND :
MACHINING, INC. :
 :
    VS. : NO. 2:05 CV 02276
 :
ALLEN BEILER :

**MEMORANDUM OF LAW OF DEFENDANT ALLEN BEILER IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION OR OTHER INJUNCTIVE RELIEF**

**I.   Statement of Facts**

   **A.   Plaintiff Plate is without "Clean Hands" and the Employment Agreement is not Enforceable**

Plate Fabrication was formed in or about March of 2004 by agreement of Allen Beiler and Ken Neary who is also the principal of Wilmington Steel and Wilmington Steel processing (WSP). The business of Plate Fabrication and Machining, Inc. (hereinafter Plate) was to perform machining operations to steel products for customers pursuant to purchase orders. The activities of Plate included machining, shearing and other processing and cutting of steel to form products to be incorporated into the products of its customers.

Beiler and Neary entered into an agreement whereby Plate would be formed to conduct machine operations and the machine operations of WSP would eventually be transferred to Plate from WSP, permitting WSP to focus on other steel processing operations, otherwise WSP was setting up a new company, Plate, in competition with WSP. Allen Beiler (Beiler) entered into the Employment Agreement in question, with Plate whereby Beiler would be President of the new company being formed by Beiler and Neary. Mr. Beiler will provide his knowledge, experience, technical ability in sales in steel machining. Neary agreed to provide the start up capital, expenses, cost of operation including the salary of President, Allen Beiler and any commissions from profits from the

revenue generated by the sales of Plate.

Defendant Beiler signed the Employment Agreement whereby he was to be President of Plate and if Plate was profitable would provide to Beiler a base compensation, bonus compensation and a percentage of equity (4%) each year that Plate was profitable. Exhibit "A," paragraphs 3(a)(b)(c) of Employment Agreement.

During the one year of operation, April 2004 to April 2005, before Neary terminated Beiler, Plate was profitable as evidenced by Beiler's commission paid in December of 2004 of $12,000.00 based upon what was determined by Neary to be profit of $60,000.00 after payment of Plate expenses. Defendant Beiler furthermore believes that the profit of Plate was an additional sum accumulated during the time period of January 2005 through April 2005 when Beiler was terminated. This commission and additional compensation, however, has not been paid by Plate to Beiler despite the Employment Agreement which provides such additional compensation is due and owing, even after termination. (See paragraph six (6) of Employment Agreement)

Without full disclosure to Beiler, Ken Neary intended from the very beginning to operate Plate as nothing more than a sales unit of his other two companies, Wilmington and Wilmington Steel Processing (WSP) and at no time did Neary ever intend to support the stand alone status of Plate. From the beginning of the operation of Plate, Neary as CEO failed to live up to a material portion of the agreement in the operation of Plate which makes the Employment Agreement unenforceable. Plate was intended to be a company independent of Wilmington and WSP, Neary's other companies, in which Beiler had no ownership interest. If profitable Beiler would, after four years, be an equity shareholder of 20 percent in Plate. Neary, however, frustrated every effort of Beiler to operate Plate as a corporation separate and distinct from the other companies owned exclusively by Neary,.

Neary, as CEO, at no time set up a separate bank account for Plate Fabrication. All banking was done in the name of WSP. Beiler had no access to the bank account

information of WSP as he had no agreement for employment on behalf of WSP or Wilmington. All banking information was kept exclusively by Neary with no information disclosed to Beiler as to the profitability and the daily expenses and cost of operation of Plate.

By virtue of the fact that Neary prohibited Plate from establishing its own bank account or any banking relationship independent of Wilmington and WSP, Plate was precluded from establishing any credit standard. Without bank accounts or credit history Plate was unable to purchase any equipment, inventory and/or accumulate any assets and did not purchase any equipment, inventory or assets during the course of the one-year period of operation of Plate. All banking and credit, as previously stated, was completed through Wilmington or WSP under the control of Neary.

During the course of the one-year period of operation of Plate all purchases of goods, equipment, inventory, assets were completed on behalf of Plate by Wilmington or WSP. Neary required Plate to make all purchases of inventory and steel and other products for machining jobs of Plate through Wilmington or WSP and then Plate would be billed by Wilmington or WSP for the cost of the inventory and goods, most times at a cost that would provide a markup or profit to WSP, Wilmington and at a higher cost to Plate.

Plate had no employees, except Beiler, and was not permitted to hire employees other than President Beiler to perform any of the shop operations of machining, shearing or other work required to complete the purchase orders of Plate's customers. All machining operations were required to be completed by WSP/Wilmington employees at hourly rates of labor set by Neary, most times at rates higher than Plate would be required to pay if it had been permitted to hire its own machinists and employees to complete these operations. Plate would then be charged by Wilmington or WSP for time and labor.

Plate had no equipment of its own to perform the machine operations required to complete the purchase orders of Plate's customers. All machine work operations were

required to be completed at Neary's directions by Wilmington/WSP employees on Wilmington/WSP machines and equipment. Beiler was paid by check drawn on the bank account of WSP. All inventory, purchases of steel products, office materials, expenses related to sales such as business trips all paid by WSP. Plate Fabrication had no separate or independent shop or office location other than Beiler's cubicle and a single phone line within the WSP/Wilmington Steel location at the Philadelphia Navy Yard.

Beiler, on many occasions during the course of the one-year operation requested Neary to permit Plate to hire its own employees, establish its own credit, open its own bank account, purchase its own inventory and equipment but Neary at all times refused the request. Plate, at the end of one year, owned nothing, had no employees other than Beiler and had no other assets of which 4 percent of the equity was owned by Beiler.

Clearly it was the intent of Neary to frustrate the Employment Agreement of Beiler which obligated Neary to transfer 4 percent of equity of Plate. Through Neary's actions and operation of Plate as a mere sales arm of Wilmington and Wilmington Steel, Neary was operating Plate so that no equity could be accumulated and since this was the only way Plate was operated for the entire year, clearly it was Neary's intention from the start up of Plate Fabrication never to live up to his contractual obligation to transfer equity

Plaintiff Plate Fabrication is not entitled to any injunctive relief by way of temporary restraining order or injunction as Plate Fabrication and its owner/ CEO Ken Neary come with "unclean hands" and the Employment Agreement between Beiler and Plate was fraudulent and unenforceable from the outset. Plate and its owner/CEO Neary at no time intended to permit or to allow Plate to be a separate and independent corporation whereby Beiler could obtain the compensation of equity rights of 4 percent per year provided Plate was profitable.

By virtue of the fact that Neary has intentionally frustrated the intent of the Employment Agreement of Beiler, Neary and Plate may not enforce other contract provisions of the Agreement regarding any employment of Beiler based on the doctrine

of unclean hands. The doctrine of unclean hands affects misconduct in the matter in suit only *Robinson v. Goldberg*, 331 Pa. 401, 405, 200 A. 4; Cf. *Dempster v. Baxmyer*, 231 Pa. 28, 36, 79 A. 805), and is available only when the plaintiff in an equity suit has been guilty of unconscionable or unlawful conduct respecting the transaction before the Court. *Comstock v. Thompson*, 286 Pa. [***6] 457, 461, 133 A. 638.; *Vercesi v. Petri*, 334 Pa. 385, 5 A. 2d 563.  "One of the limitations of the doctrine of coming into equity with unclean hands is that the wrongdoing of the plaintiff must have been in reference to the very matter in controversy and not merely remotely or indirectly connected therewith: Comstock v. Thompson, 286 Pa. 457, 461, 133 A. 638; Delaware, Lackawanna &Western R. R. Co. v. Stroudsburg, Water Gap & Portland Street Railway Co., 289 Pa. 131, 138, 137 A. 173; Valley Smokeless Coal Co. v. Manufacturers' Water Co., 302 Pa. 232, 238, 153 A.

II.    **Paragraph Nine of the Employment Agreement is not a Restrictive Covenant which Precludes any Business Operations of Beiler after Termination of Employment at Plate Fabrication and is Unenforceable**

Plaintiff's Counsel after much vitriolic language and allegations of theft and criminal conduct on the part of Beiler has clearly failed to recognize material portions of what Counsel alleges to be a restrictive covenant are missing which render Paragraph 9 unenforceable for purposes of Temporary Restraining Order or other Injunctive Relief precluding Beiler from entering into competition with Plate.

Paragraph Nine provides as follows:

> Employee hereby acknowledges that, during and solely as a result of his work with Plate Fabrication & Machining, Inc., employee may receive special training, knowledge and information relating to the operation of Plate Fabrication & Machining, Inc. and related business (Wilmington Steel Processing) of the principal owner and other related matter; employee shall not directly or indirectly engage in (as a principal, shareholder, partner, director, officer, agent, employee, consultant or otherwise), or be financially interested in any business operating in the United States of America that is a competitor to Plate Fabrication & Machining, Inc. to the extent that employee's activities involve solicitation of Plate Fabrication & Machining, Inc. customers or clients, which shall be and remain the exclusive

> property of Plate Fabrication & Machining, Inc. Employee further acknowledges that he will not disclose said customers to any third party, nor solicit said customers for the benefit of any company or individual other than Plate Fabrication & Machining, Inc.

Paragraph Nine of the Employment Agreement is not a restrictive covenant as is commonly described in employment agreements as it does not contain any language which places restrictions on the business activities, further employment activities or restriction from entering into competition by Beiler **after** his termination from Plate. Paragraph Nine merely prohibits certain activities of Beiler during the course of his employment while employed by Plate. Paragraph Nine merely binds Beiler from performing certain activities during his tenure at Plate. Breach thereof could and allegedly did result in termination from Plate. It provides nothing with regard to competition with Plate and Beiler's future employment activities.

All restrictive covenants that are to be enforceable and prohibit certain business activities of former employees contain restrictions on their activities for a reasonable period of time after the employee ceases employment for the employer. A sample of a restrictive covenant is as follows:

> That the employee agrees during the term of this contract, **and for a period of two years thereafter** that he will not be engaged in the same or similar type of business as the employer is engaged in…

Paragraph Nine of the employment agreement if parsed provides as follows:

- Beiler acknowledges that during or solely as a result of his work with Plate Beiler may receive special training, knowledge and information relating to the operation of Plate and related businesses (Wilmington Steel Processing) of the principal owner and other related matters;

- Beiler shall not directly or indirectly engage in [as a principal, shareholder, partners, director, officer, agent, employee, consultant or otherwise will be financially interested in any business operating in the USA that is a competitor to Plate Fabrication;

- To the extent that employee activities involved solicitation of Plate customers or clients which shall be in (sic) remain the exclusive property of Plate;

- Employee (Beiler) further acknowledges that he will not disclose said customers to any third-party, nor solicit said customers for the benefit of any company or individual other then (sic) Plate;

Paragraph Nine is not a "restrictive covenant" precluding Beiler from competing with Plate, performing certain activities similar in nature or in the same business as Plate or restricting Beiler's activities **after** he leaves his employment with Plate. Paragraph Nine restricts Beiler from certain activities while employed by Plate and does not contain any restriction or limitation of his activities particularly the activity of competing with Plate or WSP. Paragraph Nine does not identify certain activities of Beiler which are restricted after he leaves the employment of Plate.

Paragraph Nine does not use the word competition or restriction of his activities while no longer employed by Plate, and is merely an acknowledgment of his obligations while employed by Plate and during the course of the Employment Agreement. Since there is no restrictive covenant with regard to competition by Beiler after he leaves the employment of Plate, Beiler is free to enter into any business activity of his choosing whether in competition or not with Plate. Defendant was not subject to any covenant not to compete with Plaintiff once he left the company, so his formation of a competing company, and even the steps he took to form the company while still employed by Plate was not illegal. See United Aircraft Corp. v. Boreen, 284 F. Supp. 428, 444 (E.D. Pa. 1968) (quoting Spring Steels, Inc. v. Molloy, 400 Pa. 354, 162 A.2d 370, 372, 374 (Pa. 1960)); Oestreich v. Environmental Inks & Coatings Corp, 1990 U.S. Dist. LEXIS 17243, Civ. A. No. 89-8907, 1990 WL 210599, at *6 (E.D. Pa. Dec. 17, 1990)..

It is agreed that Beiler was terminated by Neary on April 12, 2005, however, Plaintiff herein seeks restriction on Beiler's activities after this date by requesting a Temporary Restraining Order and Injunctive Relief that are prospective in nature or after

Beiler has left the employment of Plate. Paragraph Nine of the Employment Agreement does not prohibit Beiler's activities other than during the course of the agreement which in this case would be the period April 15, 2004 through April 12, 2005 and thus any work completed by Beiler on behalf of his new company with customers of Plate is not prohibited and Plate has no basis to support a claim for injunctive relief, temporary or permanent.

**III.   Paragraph Nine of the Employment Agreement is Unenforceable as it contains no time period for restriction of Beiler's activities and knowledge**

Defendant Beiler disputes that Paragraph Nine of the Employment Agreement in any way can be interpreted to be a restrictive covenant limiting the business and employment activities of Beiler, including competition with Plate, and his knowledge accumulated over the years while employed in the steel machining business after he leaves the employment of Plate. If however the Court interprets, defines or rewrites Paragraph Nine to include a restriction after Beiler has left Plate, Paragraph Nine is unenforceable as it does not have any reasonable time period which restricts Beiler's activities after he leaves Plate nor does it identify which activities Beiler may not perform after his employment is terminated.

**IV.   Paragraph Ten of the Employment Agreement is Unenforceable As a Restrictive Covenant or as a Non-Solicitation Agreement restricting Beiler from doing business with any former customers of Plate**

**A.   Introduction**

Paragraph Ten as set forth by Plaintiff's Counsel is incorrectly set forth in Plaintiff's Brief and although presented in the Brief with a favorable interpretation to Defendant Beiler, it is **wrong, inaccurate and incorrect**. Defendant Beiler provides the correct language of Paragraph Ten as follows:

> All materials developed by employee for Plate Fabrication & Machining, Inc. shall be and remain the property of Plate Fabrication & Machining, Inc. and employee shall not use for employee's personal benefit or disclose, communicate or divulge to, or use for the direct or indirect benefit of any person, firm, association or company other than Plate

>Fabrication & Machining, Inc. any "Confidential Information" which term shall mean any information regarding the business methods, customer lists, manufacturing methods, business policies, policies, procedures, techniques, research, historical or projected financial information, budgets, trade secrets or other knowledge or processes of or developed by company, or any other confidential information relating to or dealing with the business operations or activities of company acquired by employee while in the employ of Plate Fabrication & Machining, Inc. The foregoing provisions shall apply during and after the period when employee is working for Plate Fabrication & Machining, Inc. and not a limitation of, any legally applicable protections of Plate Fabrication & Machining, Inc. interests in confidential information, trade secrets, copyrightable materials and the like.

Paragraph Ten may be commonly referred to as a "Non-Disclosure Agreement" not a Non-Solicitation Agreement and identifies as "Confidential Information" certain information relating to the business operations or activities of the company acquired by employee while in the employee of Plate Fabrication that may not be disclosed. It does not provide that Beiler agrees for a period of time after leaving Plate not to enter into a similar business or operation in competition with Plate and therefore cannot be interpreted to be a restrictive covenant limiting Beiler's employment activities to a business. Furthermore, the clause does not preclude any solicitation of Plate's former customers as it does not include any language precluding solicitation but provides that there is to be no disclosure of the information while employed at Plate.

Paragraph Ten further provides:

>The foregoing provisions shall apply during and after the period when employee is working for Plate Fabrication.

The language of Paragraph Ten although extending the time period for the applicability of the non-disclosure by Beiler, still does not constitute a non-solicitation clause as commonly interpreted in employment contracts. It has no restriction on his solicitation of former customers of Plate, such as Livermore, as there is no evidence Livermore is at this time is the customer of Plate. There is also no definition of customer outlined in the agreement and therefore the interpretation must be of present customers not past customers. In the absence of an expansive definition of customer, the Court will

interpret "customers" to mean current customers and Livermore is not a current customer of Plate. Doyle Consulting Group, Inc. V. Stofffel, 2004 WL 362316 (Phila Co.) Aff'd A.2d (Pa. Super).

Paragraph Ten furthermore is unreasonable in that it is overly broad in its restriction of Beilers activities in its scope and limitation and precludes Beiler from conducting any business activities in the steel fabrication business at any time after Plate. It precludes him from using his past experience, expertise and knowledge of the steel fabrication business and precludes him from using any information or knowledge, experience and expertise that he brought with him to Plate. It precludes him from using any vendors or business contacts that he may have met before, during or after his time period at Plate. The Court will not enforce this broad of a contract provision with regard to an employee or former employee's knowledge and business activities as it has the effectiveness of precluding the employee from conducting any employment activities

The second sentence of Paragraph Ten furthermore does not contain any time limitation as to how long Beiler may not use any information he has of the steel fabricating business, contacts or information known to him in the steel business as it merely states the provisions of Paragraph Ten apply "after the period when employee is working for Plate." This restriction is unreasonable as defined by the Courts and unenforceable.

V. **Plaintiff seeks an Injunction which causes injury and damages to Third Parties and is Overly Broad in Scope**

Plaintiff's proposed order of Court was a request that Alan Beiler and any companies, corporations, affiliates, successors and/or assigns that he is affiliated with shall immediately cease doing business with Lawrence Livermore National Laboratories, Benco Technology, LLC, RSP Tone, Stoltzfus Enterprise Fabrication, Mittal Steel USA, Trinity Products and any other customer of Plate Fabrication and Machining.

Plaintiff seeks to interfere with a business contract/purchase order between AB Fabrication, Beiler's new company, and Lawrence Livermore National Laboratories which

at the present time is in existence and ongoing. AB Fabrication has entered into a purchase order in the amount of $700,000.00 whereby AB Fabrication is obligated to provide certain machine parts and materials on a timely basis to Lawrence Livermore National Laboratories. To request Alan Beiler and AB Fabrication to cease business immediately with Lawrence Livermore would lead to compensatory damages for breach of contract and likely result in consequential damages from the breach or cessation of work by AB Fabrication on the Lawrence Livermore National Laboratories project.

Plaintiff, Plate Fabrication, furthermore requests the Court to enter an order that AB Fabrication and Alan Beiler cease using Benco Technology, LLC, RSP Towing, Stoltzfus Enterprise Fabrication and Mittal Steel USA. Each of these corporations are vendors and/or suppliers of services to AB Fabrication as well as Plate Fabrication and Machining, Inc. These companies all provide services to both Plate Fabrication Machining and AB Fabrication and are not considered "customers" of Plate Fabrication and Machining, Inc. These entities clearly are not customers of Plate Fabrication and Machining whereby Plate Fabrication receives revenue from these entities but to the contrary are vendors who provide services in exchange for compensation paid by Plate Fabrication and AB Fabrication.

The identity of these vendors are clearly and readily available through phone directories and/or common knowledge within the steel and plate machine fabrication business. To preclude Beiler from use of the vendors in question would be an inequitable preclusion of activities of the vendors and interfere in their usual business activities to their damage and injury. These companies also are not secret nor private customer lists of Plate.

VI.  **Legal Authority**

    A.  **Standard Injunctive For Relief**

The grant of injunctive relief is an extraordinary remedy which should be granted only in limited circumstances. *Instant Air Freight Co. v. C.F. Air Freight, Inc.* 882Fpf. 2d 797 (3d Cir. 1989); *Frank's G.M.C. Truck Center, Inc. v. General Motors Corp.* 847F. 2d 100, (3d Cir. 1988). In Federal Court, a federal standard as set forth in Federal Rule of Civil Procedure 65 is used in examining motions for a preliminary injunction even when the cause of action is stated. The Court must carefully rate four factors in deciding whether to issue a preliminary injunction:

    (1)    Whether the movement has shown a reasonable probability of success on the merits;

    (2)    Whether the movement will be irreparably injured by denial of the relief;

    (3)    Whether granting preliminary relief will result in even greater harm to the non-moving parties; and

    (4)    Whether granting the preliminary relief will be in the public interests.

*Allegheny Energy, Inc. v. DQE, Inc.,* 171F. 3d 153, (3d Cir. 1999).

Nevertheless, if the Court finds that "either or both fundamental preliminary injunction requirements-a likelihood of success on the merits and the probability of irreparable harm if relief is not granted-to be present, the Court cannot issue an injunction". See *McKeesport Hosp. v. Accreditation Council for Graduate Medical Educ.*, 247F. 3d 519 (3d Cir. 1994). In the case before the Court Injunctive Relief must be denied as Plaintiff has failed to prove the existence of a restrictive covenant and non-solicitation clause providing Beiler may not compete with Plate after he leaves employment.

To prove irreparable harm, a movant must demonstrate "potential harm which cannot be redressed by legal or an equitable remedy following trial. Mere injuries, however substantial, in terms of money, time and energy necessary expended in the absence of a stay are not enough. The possibility of adequate compensatory or other

corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm. Thus, an injury warranting a preliminary injunction must be 'of a peculiar nature, so that compensation and money cannot atone for it...'" *Acierno v. New Castle County*, 40F. 3d 645, (3d Cir. 1994). Further, the irreparable injury claimed by the movement cannot be speculative or remote. "More than a risk of irreparable harm must be demonstrated." Id. at 655.

Although plaintiff may succeed on the merits, Plaintiff must also make "a clear showing of immediate, irreparable injury". See *Armstrong World Inds., Inc. v. Allibert*, 1997 U.S. Dist. LEXIS 19069, No. Civ. A. 97-313914. A claim based upon a simple economic loss of business would fail to meet this difficult standard.

An assertion by plaintiff that the Court must grant injunctive relief because the parties to the non-compete agreement consented to such a remedy is insufficient as the Court is not bound by such a contractual agreement and must independently evaluate the movement's request for a preliminary injunction. See *Pice v. Clinicorp, Inc.*, 887F. Supp. 803 (W.D.Ta. 1995) which holds that while the inclusion of such a contractual provision may constitute evidence of irreparable harm, the mere inclusion cannot act as a substitute for a showing of irreparable harm. The contractual agreement and money damages would be insufficient to remedy a breach never trounced the Court's own analysis.

In the case before the Court, Plate seeks a Restraining Order from any contact or completion of a contract between Livermore LLC and Beiler's new company AB Fabrication. AB Fabrication has in progress an existing contract which has deadlines and completion near the end of November or at the latest the end of the year. To restrain Beiler and AB Fabrication from completion of the Livermore LLC contract would cause irreparable damage to Livermore who expects the contract to be completed and interfere with the contract between AB Fabrication and Livermore LLC. Livermore, as a third party, meets the third criteria as resulting in damages to the third party, precluding an

injunction herein.

### B. Federal Rule 65(c) Security Requires Posting of Security Bonds

In the context of a commercial case, the Third Circuit has stated that "a District Court commits reversible error when it fails to require the posting of a bond of a successful applicant for a preliminary injunction", pursuant to Rule 65(c) of the Federal Rules of Civil Procedure. See *Instant Air Freight*, 882F. 2d at 803-04. This requirement must be followed even when the bond creates a barrier to the granting of the injunction. Such a requirement is necessary to mitigate the risk of economic harm from a preliminary injunction in which the movement ultimately fails to succeed on the merits. See *Hoxworth v. Blinder Robinson & Co., Inc.* 903F. 2d 186 (1990).

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the Court deems proper, for the payment of costs and damages as may be incurred or suffered by any party who is found to have been wrongly enjoined or restrained.

The contract between Livermore and AB Fabrication, Beiler's new company is estimated by Beiler to be valued at $700,000. Security in excess of this figure should be posted, a figure of $2,000,000 would be appropriate to secure any associated contractual interference and breach of contract damage claims of Livermore including penalties, counsel fees, costs resulting from the stoppage of work and cost of retaining a new machine company satisfactory to Livermore to complete the job on an expedited basis so all time requirements are met. Defendant Beiler suggests to the Court that security in this amount is a minimum figure.

### C. Non-Competition Agreements

Restrictive covenants, of which non-competition (Paragraph 9 herein, as alleged by Plaintiff) and non-disclosure (Paragraph 10 herein) covenants are the most frequently utilized, and are commonly relied upon by employers to shield their protectable business interests.  The non-disclosure covenant limits the dissemination of proprietary

information by a former employee, while the non-competition covenant precludes the former employee from competing with his prior employer for a specified period of time and within a precise geographical area during and after leaving employment. Non-Solicitation Agreements usually provide a former employee may not solicit a customer of his former employer.

Pennsylvania Courts have instructed that restrictive covenants are to be narrowly construed. All-Pak, Inc. v. Johnston, 694 A.2d 347, 354 (Pa. Super. Ct. 1997). See also Hess v. Gebhard & Co., 2001 Pa. Super. 65, 769 A.2d 1186, 1191 (Pa. Super. Ct. 2001). Given that restrictive covenants have been held to impose the restraint on an employee's right to earn a livelihood, they should be construed narrowly.

Ken Neary and Plate Fabrication drafted the Employment Agreement and presented it to Beiler for revisions and multiple drafts were completed before signed by Neary. It is a basic principle of contract interpretation that agreements will be construed against the drafter when their terms are ambiguous. Smith v. The Windsor Group, 2000 Pa. Super. 67, 750 A. 2d 304 (Pa. Super. Ct. 2000); Dieter v. Fidelcor, Inc., 441 Pa. Super. 215, 221, 657 A. 2d 27 (1995). In Rusiski v. Pribonic, 511 Pa. 383, 515 A. 2d 507 (1986), doubtful language is construed most strongly against the drafter. If Neary and Plate had wanted a non-competition provision it could easily have worded the provision to include a restriction on competition or doing business in the same or similar business broadly and explicitly to ensure that its intent was unambiguous and unmistakable. In this case it did not and the Court cannot by inference extend Paragraph 9 to include a covenant not to compete when no language is specifically set forth therein restricting Beiler.

In Pennsylvania, restrictive covenants are enforceable if they are incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonable necessary for the protection of the employer and the restrictions imposed are reasonably limited in duration and geographic extent. Sidco Paper Co. v. Aaron, 465 Pa. 586, 351 A.2d 250 (Pa. 1976); Morgan's Home Equipment Corp. v. Martucci,

390 Pa. 618, 136 A. 2d 838 (Pa. 1957). Pennsylvania law permits equitable enforcement of employee covenants not to compete only so far as reasonably necessary for the protection of the employer. However restrictive covenants are not favored in Pennsylvania and have been historically viewed as a trade restraint that prevents a former employee from earning a living. Jacobson & Co. v. Int'l. Env't. Corp., 427 Pa. 439, 235 A. 2d 612 (Pa. 1967).

A restrictive covenant between a employer and an employee is enforceable at equity only if (1) it is ancillary to an employment relationship, (2) it is reasonably limited in duration and geographic scope, and (3) the enforcement is necessary to protect a legitimate business interest of the employer without imposing an undue hardship on the employee. John G. Bryant Co. Inc. v. Sling Testing and Repair Inc., 471 Pa. 1369 A. 2d 1164; Boldt Machinery & Tools Inc. v. Wallace, 469 Pa. 504, 366 A. 2d 902 (1976).

The burden of establishing the unenforceability of the covenant rests on the employee. The Court must consider the facts and circumstances on a case-by-case basis. Insulation Corp. of America v. Brobston, 446 Pa. Super. 520, 667 A. 2d 729 (1995).

The duration of the covenant is reasonable if it is no longer than necessary for the employer to "put a new man on the job and for the new employee to have a reasonable opportunity to demonstrate his effectiveness to the customers." Robert Clifton Associates v. O'Connor, 338 Pa. Super. 246, 487 A. 2d 947 (1985). There is no evidence that Neary has retained a new President or hired another employee to replace Beiler at Plate to continue operations at Plate after Beiler left. Since there was never any intention of operating Plate anything other that as a sales arm of Wilmington and WSP Neary has most likely continued his business activities of completing all machining operations, sales and work through WSP and discontinued Plate's activities.

### D.   Non-Solicitation Agreements

Defendant Beiler disputes that Paragraph Ten restricts or precludes Beiler from doing business with any former clients of Plate as Paragraph Ten does not contain any

terms that can be interpreted as requiring Beiler not to solicit customers after leaving employment.

Pennsylvania law provides an employer the right to the protection of its confidential information under certain, defined circumstances. *MacBeth-Evans Glass Co. v. Schnelbach*, 239Pa 76, 86A 688 (1913). Generally information must be a particular secret of the employer, not a general secret of the trade, it must be of peculiar importance to the conduct of the employer's business. Given the existence of such confidential information, the legal right to protection may arise either from an express covenant protecting the secret or maybe be implied from the confidential relationship between the employer and employee once the information was conveyed. Id. See also *Felnlee v. Lockett*, 466Pa. 1, 351A, 2d 273 (1976).

Customer information may be subject to such a protection but whether customer information is protected depends upon whether the information involved in a particular case fulfills the general standard for protection as outlined in *MacBeth-Evans* and numerous like cases. Where the information is not a particular secret belonging to the employer, developed through its efforts or investment, and of value to the continuation of employer's business, no protection is afforded.

If the information the employer seeks to keep confidential could be obtained by legitimate means by its competitors, enforcement of the covenant on that basis is not appropriate. *Carl A. Colteryahn Dairy v. Schneider Dairy*, 415Pa. 276, 203A. 2d 469 (Pa. 1964) stating that equity will not protect mere names and addresses easily ascertainable by observation or reference to directories. *Accord Bettinger v. Carl Berke Assoc., Inc.* 455Pa. 100, 314A. 2d 296 (Pa. 1974).

Plaintiff herein cannot prove or demonstrate that confidential information is at issue. The existence of Lawrence Livermore came to Plaintiff, Plate, through referral from a third party and clearly was not a secret or a confidential piece of information. Clearly, the existence of Lawrence Livermore as a client in the manufacture and machining of

metal plate was common knowledge in the steel business. Plaintiff seeks to preclude defendant, Alan Beiler from use of his knowledge of Lawrence Livermore, LLC, the expertise and skill of Alan Beiler at all times into the future. Clearly, this is an unreasonable restraints of the business activities and employment of Alan Beiler.

### VII.  Conclusions

For the following reasons the Motion of Defendant for Temporary Restraining Order and Injunctive Relief must be Denied:

- Plaintiff is precluded from enforcing the Employment Agreement based on fraud at inception and the "Doctrine of Unclean Hands";

- The Employment Agreement does not contain a Non-Competition Clause of Beiler's activities after leaving the employment of Plate;

- The Employment Agreement does not contain a Non-Solicitation Clause with regard to Beiler's activities after he leaves the employment of Plate;

- The Employment Agreement is unreasonable as to time and description of activities of Beiler after leaving employment at Plate;

- The Request for Injunctive Relief is not supported by the Employment Agreement and seeks activities that interfere with contracts and business activities of innocent third parties, such as Livermore LLC, Stoltzfuss, Benco; Technology, Mittal Steel USA, Trinity Products;

- If the Court issues any Injunctive Relief the Plaintiff shall be required to post Security in the amount of $2,000,000 in the event Plaintiff shall fail to properly prove liability at the Trial of the case.

WHEREFORE, Defendant Beiler requests the Court to Deny the Motion of Plaintiff seeking all Injunctive Relief, Temporary or Permanent.

MARGOLIS EDELSTEIN

BY: /s/ Walter J. Timby, III (WJT5429)
    WALTER J. TIMBY, III, ESQUIRE
    (Attorney I.D. No. 23894)
    The Curtis Center, Fourth Floor
    Independence Square West
    Philadelphia, PA  19106
    (215) 922-1100
    Attorney for Allen R. Beiler