UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

PLATE FABRICATION AND      :
MACHINING, INC.            :
                           :
        VS.                :
                           :   NO. 2:05 CV 02276
ALLEN BEILER               :
                           :

## AFFIDAVIT OF ALLEN BEILER IN OPPOSITION TO MOTION FOR INJUNCTIVE RELIEF

Plate Fabrication was formed in or about March of 2004 by agreement of Allen Beiler and Ken Neary who is also the principal of Wilmington Steel and Wilmington Steel processing (WSP). The business of Plate Fabrication and Machining, Inc. (hereinafter Plate) was to perform machining operations to steel products for customers pursuant to purchase orders. The activities of Plate included machining, shearing and other processing and cutting of steel to form products to be incorporated into the products of its customers.

Beiler and Neary entered into an agreement whereby Plate would be formed to conduct machine operations and the machine operations of WSP would eventually be transferred to Plate from WSP, permitting WSP to focus on other steel processing operations, otherwise WSP was setting up a new company, Plate, in competition with WSP. Allen Beiler (Beiler) entered into the Employment Agreement in question, with Plate whereby Beiler would be President of the new company being formed by Beiler and Neary. Mr. Beiler will provide his knowledge, experience, technical ability in sales in steel machining. Neary agreed to provide the start up capital, expenses, cost of operation including the salary of President, Allen Beiler and any commissions from profits from the

revenue generated by the sales of Plate.

Defendant Beiler signed the Employment Agreement whereby he was to be President of Plate and if Plate was profitable would provide to Beiler a base compensation, bonus compensation and a percentage of equity (4%) each year that Plate was profitable. Exhibit "A," paragraphs 3(a)(b)(c) of Employment Agreement.

During the one year of operation, April 2004 to April 2005, before Neary terminated Beiler, Plate was profitable as evidenced by Beiler's commission paid in December of 2004 of $12,000.00 based upon what was determined by Neary to be profit of $60,000.00 after payment of Plate expenses. Defendant Beiler furthermore believes that the profit of Plate was an additional sum accumulated during the time period of January 2005 through April 2005 when Beiler was terminated. This commission and additional compensation, however, has not been paid by Plate to Beiler despite the Employment Agreement which provides such additional compensation is due and owing, even after termination. (See paragraph six (6) of Employment Agreement)

Without full disclosure to Beiler, Ken Neary intended from the very beginning to operate Plate as nothing more than a sales unit of his other two companies, Wilmington and Wilmington Steel Processing (WSP) and at no time did Neary ever intend to support the stand alone status of Plate. From the beginning of the operation of Plate, Neary as CEO failed to live up to a material portion of the agreement in the operation of Plate which makes the Employment Agreement unenforceable. Plate was intended to be a company independent of Wilmington and WSP. Neary's other companies, in which Beiler had no ownership interest. If profitable Beiler would, after four years, be an equity shareholder of 20 percent in Plate. Neary, however, frustrated every effort of Beiler to

operate Plate as a corporation separate and distinct from the other companies owned exclusively by Neary.

Neary, as CEO, at no time set up a separate bank account for Plate Fabrication. All banking was done in the name of WSP. Beiler had no access to the bank account information of WSP as he had no agreement for employment on behalf of WSP or Wilmington. All banking information was kept exclusively by Neary with no information disclosed to Beiler as to the profitability and the daily expenses and cost of operation of Plate.

By virtue of the fact that Neary prohibited Plate from establishing its own bank account or any banking relationship independent of Wilmington and WSP, Plate was precluded from establishing any credit standard. Without bank accounts or credit history Plate was unable to purchase any equipment, inventory and/or accumulate any assets and did not purchase any equipment, inventory or assets during the course of the one-year period of operation of Plate. All banking and credit, as previously stated, was completed through Wilmington or WSP under the control of Neary.

During the course of the one-year period of operation of Plate all purchases of goods, equipment, inventory, assets were completed on behalf of Plate by Wilmington or WSP. Neary required Plate to make all purchases of inventory and steel and other products for machining jobs of Plate through Wilmington or WSP and then Plate would be billed by Wilmington or WSP for the cost of the inventory and goods, most times at a cost that would provide a markup or profit to WSP, Wilmington and at a higher cost to Plate.

Plate had no employees, except Beiler, and was not permitted to hire employees other than President Beiler to perform any of the shop operations of machining, shearing or other work required to complete the purchase orders of Plate's customers. All machining operations were required to be completed by WSP/Wilmington employees at hourly rates of labor set by Neary, most times at rates higher than Plate would be required to pay if it had been permitted to hire its own machinists and employees to complete these operations. Plate would then be charged by Wilmington or WSP for time and labor. Plate had no equipment of its own to perform the machine operations required to complete the purchase orders of Plate's customers. All machine work operations were required to be completed at Neary's directions by Wilmington/WSP employees on Wilmington/WSP machines and equipment. Beiler was paid by check drawn on the bank account of WSP. All inventory, purchases of steel products, office materials, expenses related to sales such as business trips all paid by WSP. Plate Fabrication had no separate or independent shop or office location other than Beiler's cubicle and a single phone line within the WSP/Wilmington Steel location at the Philadelphia Navy Yard.

Beiler, on many occasions during the course of the one-year operation requested Neary to permit Plate to hire its own employees, establish its own credit, open its own bank account, purchase its own inventory and equipment but Neary at all times refused the request. Plate, at the end of one year, owned nothing, had no employees other than Beiler and had no other assets of which 4 percent of the equity was owned by Beiler.

Clearly it was the intent of Neary to frustrate the Employment Agreement of Beiler which obligated Neary to transfer 4 percent of equity of Plate. Through Neary's actions and operation of Plate as a mere sales arm of Wilmington and Wilmington Steel, Neary

was operating Plate so that no equity could be accumulated and since this was the only way Plate was operated for the entire year, clearly it was Neary's intention from the start up of Plate Fabrication never to live up to his contractual obligation to transfer equity

Plaintiff Plate Fabrication is not entitled to any injunctive relief by way of temporary restraining order or injunction as Plate Fabrication and its owner/CEO Ken Neary come with "unclean hands" and the Employment Agreement between Beiler and Plate was fraudulent and unenforceable from the outset. Plate and its owner/CEO Neary at no time intended to permit or to allow Plate to be a separate and independent corporation whereby Beiler could obtain the compensation of equity rights of 4 percent per year provided Plate was profitable.

_____
ALLEN BEILER

SWORN TO AND SUBSCRIBED
BEFORE ME THIS _____ DAY
OF _____, 2005.

_____
Notary Public